Georgia B. CORDELL, Plaintiff,

v.

**GREENE FINANCE OF GEORGE-TOWN, GEORGIA, et al., Defendants.**

CA No. 95 D–220–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 29, 1996.

Samuel L. Adams, Jimmy K. Moulton, Dothan, AL, for plaintiff.

David G. Crockett, Atlanta, GA, for Greene Finance.

Michael L. Bell, Melody L. Hurdle, William B. Hairston, III, Nathan R. Norris, Birmingham, AL, for Voyager Indemnity.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This matter is now before the court on two separate motions for summary judgment.[1] Defendant Greene Finance Company of Georgetown, Georgia ("Greene") filed its motion on July 18, 1996. Plaintiff, Georgia B. Cordell ("Plaintiff"), responded in opposition to Greene's motion on August 6, 1996.

Defendants Voyager Life and Health Insurance Company ("Voyager Life") and Voyager Indemnity Insurance Company ("Voyager Indemnity") jointly filed a motion on July 18, 1996. The Plaintiff responded in opposition to the joint motion on August 6, 1996.

After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that: Greene's motion for summary judgment is due to be denied in part and granted in part; (2) Voyager Life's motion is due to be denied in part and granted in part; and (3) Voyager Indemnity's motion is due to be denied in part and granted in part.

## JURISDICTION

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1441 (removal jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction). Diversity jurisdiction is proper because complete diversity exists between the parties and the amount in controversy exceeds $50,000, exclusive of interest and costs. Personal jurisdiction and venue are uncontested by Voyager Life and Voyager Indemnity. Greene's motion to dismiss for lack of personal jurisdiction and improper venue was denied by this court in a memorandum opinion issued August 11, 1995.

## STATEMENT OF FACTS

Plaintiff entered into several loan transactions with Greene over the course of several years. On December 29, 1994, Plaintiff filed an action against Greene, a Georgia corporation with its principal place of business in Georgia, and Voyager Indemnity, a Georgia corporation with its principal place of business in Texas, in the Circuit Court of Barbour County, Alabama. This action was based upon the Plaintiff's three most recent loans from Greene: (1) the loan of May 14, 1992 ("Loan One"); (2) the loan of May 3, 1993 ("Loan Two"); and (3) the loan of April 15, 1994 ("Loan Three"). On February 15, 1995, Voyager Indemnity removed the case to the United States District Court for the Middle District of Alabama, Northern Division, and Greene joined in the removal. By an order of the court dated March 15, 1995, Plaintiff was allowed to amend his complaint and Plaintiff added Voyager Life as a defendant in this action.

Each of the three loans involved in this action are basically identical and involve approximately the same amount of money. Johnny Rowland, a Greene employee sold the Plaintiff credit life insurance ("Credit Life") and credit disability insurance ("Credit Disability") on each of the three loans. Each loan included premiums for Credit Life and Credit Disability insurance as well as premiums for non-recording insurance for the items in which Greene took a security interest. Greene submitted the premiums for the Credit Life and Credit Disability coverage to Voyager Life while the non-recording premiums were sent to Voyager Indemnity. The Plaintiff contends that Johnny Rowland acted as an agent for each of the Defendants during these three loans and Defendants do not dispute this relationship in their motions for summary judgment.

According to his deposition, the Plaintiff was accompanied by a family member during each of the three loan transactions. Pl.'s Depo. at 29. Due to medical problems, the Plaintiff was unable to read the loan papers or the insurance policy provisions at the time of the loan transactions. Id. at 34–35. The Plaintiff did not ask either his accompanying relative or Johnny Rowland to read the loan papers or policy provisions. Id. at 32–33. The Plaintiff also told Johnny Rowland at the

[1]. There are three defendants in this case: Greene Finance Company of Georgetown, Georgia; Voyager Life and Health Insurance Company; and Voyager Indemnity Insurance Company.

time of each loan that he was unable to read the loan documents. *Id.* at 33. The Plaintiff did not make a claim on any of the insurance policies. It is undisputed by the parties that Georgia substantive law is to be applied by the court to this matter.

The Plaintiff's amended complaint now contains five pending counts. Counts I and II allege that in connection with Loan Two and Loan Three Defendants Greene, Voyager Life, and Voyager Indemnity [2] fraudulently misrepresented that the Plaintiff would be covered by the Credit Life and Credit Disability insurance which Plaintiff had purchased. Count VII alleges that the Defendants committed fraud by violating § 33–31–11 of the Code of Georgia in regards to Loans One, Two, and Three.[3] Count VIII alleges that each of the Defendants engaged in a scheme of fraudulent conduct in Loans One, Two, and Three by taking a security interest in various household goods which violated 16 C.F.R. § 444.2(a)(4).[4] In Count XI the Plaintiff asserts an independent claim for mental anguish as the result of the Defendants' fraudulent conduct. Each of the Defendants have requested summary judgment as to each of these five counts.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories,

**2.** The court is hard pressed to find a connection between Voyager Indemnity and the claims asserted in Counts I and II since these claims involve loan premiums collected by Greene and submitted to Voyager Life not Voyager Indemnity. However, Voyager Indemnity does not raise this issue in its brief for summary judgment and the court declines to act upon its observation.

**3.** Georgia Code § 33–31–11 forces creditors which require credit life or credit disability in-

surance to allow debtors upon written request to have the option to purchase the insurance from another source or rely upon existing policies of insurance which provide the required coverage.

**4.** 16 C.F.R. § 444.2(a)(4) labels the taking of a non-possessory, non purchase money security interest in household goods as an unfair credit practice.

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. *See also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### DISCUSSION

#### Illiteracy and Due Diligence

■ The court must first deal with the Plaintiff's functional illiteracy [5] and its impact upon the Plaintiff's duty of diligence with reference to the insurance policy provisions. The Defendants insist that the Plaintiff was required to exercise reasonable diligence with respect to the insurance policy documents. As the Defendants point out, Georgia case law requires a party, in the absence of special circumstances, to make an independent verification of the contractual terms of insurance policies or the party's action in fraud is barred. *E.g., Life Ins. Co. of Virginia v. Conley,* 181 Ga.App. 152, 351 S.E.2d 498, 500 (1986); *Goodwin v. Browning,* 176 Ga.App. 442, 336 S.E.2d 353, 353 (1985). These special circumstances include the existence of a confidential or fiduciary relationship between the parties to the transaction. *Id.* However, no such relationship is alleged between the Plaintiff borrower and the Defendants.

■ However, the situation is not as simple when a party to the contract claims an inability to read. The Plaintiff alleges that he could not read the policies due to medical problems and that he told Johnny Rowland that at the time of the loan transactions. Georgia courts have decided several cases that deal with illiterate plaintiffs and their responsibilities in contract situations. *E.g., Mallard v. Jenkins,* 179 Ga.App. 582, 347 S.E.2d 339 (1986); *International Indemnity Co. v. Smith,* 178 Ga.App. 4, 342 S.E.2d 4 (1986); *Reserve Life Ins. Co. v. Meeks,* 121 Ga.App. 592, 174 S.E.2d 585 (1970); *Robertson v. Panlos,* 208 Ga. 116, 65 S.E.2d 400 (1951). These decisions have established two broad principles. First, an illiterate plaintiff who signs a contract in the absence of a misrepresentation is not allowed to assert illiteracy as a ground for ignorance of the terms of the contract. *Robertson,* 65 S.E.2d at 120 (holding that illiteracy is "not of itself sufficient" to prove fraud); *International Indemnity,* 342 S.E.2d at 5 ("[Plaintiff's] illiteracy, in and of itself, provides no excuse for his failure to comply with the . . . insurance policy."). Second, if an illiterate plaintiff is induced to sign a contract, then the illiterate plaintiff may rely upon the representation of the other party as to what the instrument contains. *Mallard,* 347 S.E.2d at 340 ("'Where . . . one who can not read is induced to sign an instrument by the misrepresentations of the other party as to its character or contents, he is not bound thereby.'"); *Reserve Life,* 174 S.E.2d at 589 ("'[The illiterate plaintiff] may, ordinarily, rely upon the representation of the other party as to what the instrument is or as to what it contains; and his mere failure to request the other party or some one else, to read it to him will not generally be such negligence as will make the instrument binding upon him.'").

■ Therefore, Georgia case law does not automatically compel an illiterate person to independently investigate the contents of a written contract. Moreover, if the other party induced the illiterate person to sign by misrepresenting the contents of the writing, then the illiterate person is not charged with

---

5. Even though the Plaintiff states that he is able to read and write the English language, he also states that he has been unable to do so for several years due to vision problems relating to glaucoma. Pl.'s Depo. at 34–35. The court finds that these alleged vision problems are sufficient to classify the Plaintiff as functionally illiterate.

knowledge of the document's provisions that differ from the misrepresentation. In this action there is no dispute that the Plaintiff was unable to read during the three loan transactions in question. In his deposition the Plaintiff claims that Johnny Rowland discussed the insurance coverages and represented that the insurance policies would cover the Plaintiff.[6] Pl.'s Depo. at 83. Therefore, the court finds that the Plaintiff has raised a genuine issue of material fact about whether the Defendants made misrepresentations to the Plaintiff regarding the extent of coverage and whether the Plaintiff signed the policies based upon these alleged misrepresentations. Accordingly, summary judgment is due to be denied on the aforementioned ground.

### Counts I and II

Georgia case law requires a fraud plaintiff to prove each of five elements: (1) a misrepresentation of a material fact by the defendant; (2) with knowledge that the representation is false or with a reckless disregard for its truth; (3) with an intent to induce the plaintiff to act or not act; (4) that the plaintiff justifiably relied upon the misrepresentation; and (5) that this reliance caused damage to the plaintiff. *Hubbard v. Stewart,* 651 F.Supp. 294, 298 (M.D.Ga.1987). For the Plaintiff to survive a motion for summary judgment, he must demonstrate that a material issue of fact exists as to each of these five elements. *See Id.* Otherwise, the court will grant summary judgment for the Defendants. *See Id.*

### Credit Life Insurance

Counts I and II allege that the Defendants misrepresented the value of the Plaintiff's Credit Life insurance in Loan Two (Count I) and Loan Three (Count II). The Plaintiff claims that instead of telling the Plaintiff that this insurance was actually worthless, the Defendants represented to him that this coverage was worthwhile. For the Plaintiff to prevail, he must show that these representa-

tions were false or that at least there is a material issue of fact as to their truthfulness.

The Plaintiff's claim that the Credit Life policies in Loan Two and Loan Three were worthless is based upon the express terms of the two policies and the fact that Plaintiff turned 71 during Loan Two and was 71 at the beginning of Loan Three. Loan Two and Loan Three were issued on two different forms. The form in effect during Loan Two, CR–2510 states:

**WHAT WE DO NOT PAY**

**Misstatement of Age:** You (the debtor) are not eligible for this insurance if you will be 71 before the number of months in the term of insurance has passed; we will return your premium when we discover this. If the true age has been stated on the application or policy, and insurance has been issued, the insurance shall be in force and benefits shall be payable. If age is misstated in such a way that either you or the Joint Debtor is not eligible for coverage hereunder, our liability will be limited to a return of premium paid by you. If you have correctly stated your age on the application for insurance, coverage will remain in effect and benefits will be paid for any valid claim.

While the Defendants claim that the language of the policy unambiguously provides for coverage as long as the Plaintiff's age is correctly stated, the court is not convinced. The first sentence of this section prevents the court from ruling for the Defendants. This sentence clearly states that a person who turns 71 during the term of the policy is ineligible for credit life coverage and that the insurer will return the applicant's premium as soon as the insurer discovers that fact. In contrast, the remainder of the passage seems to provide coverage regardless of age as long as the applicant has properly stated his age at the time of application and the insurance has been issued. The combination of these two contradictory sections creates a material issue of fact as to whether an applicant over 70 would have been covered under the Loan

---

6. While the Plaintiff cannot recall a discussion of credit disability coverage, a misrepresentation of the Plaintiff's credit disability coverage may have still taken place. That is, a jury could find that

Johnny Rowland's alleged failure to inform the Plaintiff that the Plaintiff had purchased worthless credit disability insurance is a misrepresentation of a material fact albeit by an omission.

Two Credit Life policy. Since it is undisputed that the Plaintiff would have turned 71 during the term of the credit life policy provided under Loan Two, there is a material issue of fact regarding coverage of the Loan Two Credit Life policy.

The form in effect during Loan Three, CR–2946, states:

ELIGIBILITY: You are ·not eligible for insurance if you are 70 years old or will be 71 before the number of months in the term of the insurance have passed.

On the back side the form states:

**WHAT WE DO NOT PAY**

**Misstatement of Age:** If you are over 70 years old you are not eligible for this insurance, or, if you will be 71 before the number of months in the term of insurance has passed, we will return your premium when we discover this and will not pay any benefits. If the true age has been stated on the application or policy, and insurance has been issued, the insurance shall be in force and benefits shall be payable. If age is misstated in such a way that you are not eligible for coverage hereunder, our liability will be limited to a return of premium paid by you. If you have correctly stated your age on the application for insurance, coverage will remain in effect and benefits will be paid for any valid claim.

This language is similar to that in the Loan Two form and once again contains contradictory language which suggests coverage once a policy has been issued and then also suggests that premiums could be returned at any time. Therefore, the court finds that there is a material factual dispute over whether the Credit Life coverage in Loan Three would be effective.

 The Defendants counter this conclusion by citing Georgia decisions which estop an insurer who accepts insurance premiums from later denying claims upon that policy. *American Home Mutual Life Ins. Co. v. Harvey,* 99 Ga.App. 582, 109 S.E.2d 322, 324 (1959) (holding 65 year age condition was legally waived when insurer accepted premiums). However, other decisions have denied an insured's attempt to use waiver and estoppel to force an insurer to pay bene-

fits after accepting premiums. *Ideal Mutual Ins. Co. v. Lucas,* 593 F.Supp. 466 (N.D.Ga. 1983) (finding that pilot flight hour requirement was an exclusion and waiver and estoppel could not be used to force insurer to pay where pilot failed to meet requirement); *Kessler v. Georgia Int'l Life Ins. Co.,* 165 Ga.App. 60, 299 S.E.2d 131 (1983) (holding that estoppel doctrine could not support an effort to force insurer to pay under a credit disability policy where insured was not gainfully employed at time of application in contravention of policy provision).

While these courts have sought to structure a logical framework to support these seemingly inconsistent decisions, the court is unable to reconcile these decisions. The *Kessler* court simply states that "insurance is a matter of contract and the parties are bound by terms of the policy," *Kessler,* 299 S.E.2d at 134; while the *Ideal Mutual* court based its decision on the difference between an exclusion and a condition finding that waiver and estoppel are effective for conditions but are not effective when dealing with an exclusion, *Ideal Mutual,* 593 F.Supp.· at 468. The *Ideal Mutual* court defined an exclusion as circumstances in which the insurance company will not cover a "specific risk or hazard" that otherwise would fall within policy coverage and noted that the provision in question was listed in a section titled "Exclusions." *Id.* at 468–69. However, the *American Home* court allowed waiver and estoppel even though the provision in question was listed in a section titled "Not Covered." 109 S.E.2d at 323 (dealing with a provision terminating coverage for any person over age 65). *See also* Barwick, 324 S.E.2d at 759. (allowing waiver and estoppel even though policy contained a provision which like that in *American Home* denied coverage to those over 65).

Finding no consistent legal rationale to support these differing decisions, the court instead looks to the factual situation of each decision for guidance. In the two decisions allowing waiver and estoppel, the policy provisions denied coverage for those over 65 while the two decisions denying waiver and estoppel dealt with other type provisions, specifically preexisting disability and pilot

flight hours. Therefore, the court finds that Georgia case law estops insurers from denying claims based on age restrictions while other restrictions are immune from waiver and estoppel.[7]

Since the Credit Life provision in question involves an age-based restriction, the court finds that waiver and estoppel would have prevented the Defendants from denying the Plaintiff's claim on the Credit Life policy despite the fact that the Plaintiff violated the policy's age provision. Therefore, the court finds that the Credit Life policies in Loans Two and Three were effective and there was no misrepresentations as the Plaintiff alleged. Therefore, the Defendants' motions for summary judgment on Plaintiff's claims of fraud for Defendants' sale of Credit Life insurance in Loans Two and Three covered by Counts I and II are due to be granted.

### Credit Disability Insurance

In Counts I and II, the Plaintiff claims that the Defendants misrepresented to the Plaintiff that the Credit Disability policies issued under Loan Two and Loan Three were worthwhile while in reality they were worthless. The Plaintiff's claims are based upon the language of the forms used for each loan. The form in effect for Loan Two, CR–2150, in reference to Credit Disability insurance states:

**Total Disability Insurance Benefit:** The Joint Insured in not eligible for total disability insurance. If you are insured for total disability (also called "loss of time" insurance[ ) ], we will pay a benefit if you file due written proof that you became totally disabled while insured and continue to be totally disabled for more than the number of days on the Waiting Period in the Schedule. If retroactive benefits were elected in the Schedule, payment will be calculated form the first day of disability. The benefit will be equal to 1/30th of your Monthly Total Disability Insurance Benefit in the Schedule for each day of disability to be compensated. Payments will stop when one of the following happens: 36 months have passed since the Effective Date; or this insurance stops; or you are not totally disabled anymore.

**Definition of Total Disability:** During the first 12 months of disability while this policy is in force total disability means that due to accident or sickness you (primary debtor) are not able to perform the duties of your occupation at the time disability occurred. After 12 months this definition changes. You must thereafter be unable to perform the duties of any occupation for which you are reasonably fitted by education, training or experience. You will be required to give us written proof of your continuing total disability from time to time.

The Plaintiff claims that the Defendants represented that the Loan Two Credit Disability policy was effective when in reality it was worthless. The Plaintiff bases this allegation upon his disclosures to Johnny Rowland [8] at the time of the loan application and the express language of the loan application.

---

7. Voyager Life and Voyager Indemnity in a filing dated August 8, 1996, provided the court with a notice of supplemental authority which advised the court of the issuance of an Alabama Supreme Court opinion, *Ex parte Ikner*, 682 So.2d 8 (Ala. 1996). In a motion dated August 12, 1996, the Plaintiff moved the court to strike this notice on several grounds. The court finds that even if the Plaintiff' motion to strike is denied, such a finding does not change the court's findings as set forth in this opinion and order. The *Ikner* decision deals exclusively with Alabama substantive law; however, as stated previously, the court is concerned solely with Georgia substantive law. Therefore, the court finds that the *Ikner* decision has no impact on the instant findings of this court.

8. The court finds that the Plaintiff's contention of total disability does not impact the Plaintiff's Credit Disability claims in Counts I and II. The court is unable to find any evidence in the form of a deposition, affidavit, or otherwise where the Plaintiff alleges that he was totally disabled at the time of the loan transactions. While the Plaintiff contends that his listing of health problems and receipt of Social Security payments equates to a claim of total disability, the court finds that such assertions do not amount to a claim of total disability. Even if the Plaintiff has properly alleged that he was totally disabled, he has not alleged that he informed Johnny Rowland of such condition. Therefore, the court additionally finds that this alleged claim of disability would not aid the Plaintiff's claims in Counts I and II since Johnny Rowland could not have acted intentionally or recklessly when he did not have knowledge of the Plaintiff's purported condition.

For the Plaintiff's claim to survive there must exist a factual question as to whether the Plaintiff was covered by the Credit Disability policy. There is no disability-specific language that the court can find which would have made Johnny Rowland's representation of the policy's value a misrepresentation.

However, it is possible that the age requirements of Loan Two could also apply to the Credit Disability portion of the policy. If so, then the Plaintiff would have been ineligible for Credit Disability benefits because of his failure to meet the policy's age requirements. Therefore, if there is any factual dispute over the Plaintiff's Credit Disability coverage under Loan Two, that dispute is over an age-based restriction. However, as explained earlier, the court finds that insurers are estopped from enforcing age-based restrictions when, as here, they have accepted premiums from the insured. Therefore, the Defendants would have been unable to invalidate the Plaintiff's Credit Disability policy under Loan Two due to waiver and estoppel. Based upon the above, the court finds that there was no misrepresentation as to the validity of the Credit Disability policy in Loan Two and that the Defendants' motions on the portion of Count I are due to be granted.

 The Credit Disability policy for Loan Three utilized Form CR–2946 which contains the following language on its face:

ELIGIBILITY: You have been issued this certificate based on the information contained in your application which set forth the eligibility requirements for this insurance. These eligibility requirements are:

. . . . .

3. Disability caused by pre-existing conditions is not covered for 6 months.

4. You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. We will not deny a claim due to your subsequent unemployment or retirement during the term of the insurance.

5. Disability coverage, if you elected it, stops after the term of the insurance has passed, or, after 36 months have passed, whichever is earlier. If you are totally disabled after disability coverage stops you must pay your Creditor your correct loan payments to keep your loan from being delinquent.

On the reverse side the form states:

**Total Disability Insurance Benefit:** If you are insured for total disability (also called "loss of time") insurance, we will pay a benefit if you file due written proof that you became totally disabled while insured and continue to be totally disabled for more than the number of days in the Waiting Period in the Schedule. Payment will be calculated from the first day of disability. The benefit will be equal to 1/30th of your Monthly Total Disability Insurance Benefit for each day of disability to be compensated. No such benefit shall be paid for an amount greater than the monthly payment on your debt nor for an amount greater than the Limits above. Payments will stop when one of the following happens: 36 months have passed since the Effective Date; or this insurance stops; or you are not totally disabled anymore.

**Definition of Total Disability:** During the first 12 months of disability while this policy is in force, total disability means that due to accident or sickness you are not able to perform the duties of your occupation at the time disability occurred. After 12 months this definition changes. You must thereafter be unable to perform the duties of any occupation for which you are reasonably fitted by education, training or experience. You will be required to give us written proof of your continuing total disability from time to time.

The Plaintiff claims that based upon the express terms of this policy and the Plaintiff's circumstances at the time of the insurance application, the Plaintiff's Credit Disability coverage was worthless. As mentioned previously, the Plaintiff alleges that he informed Johnny Rowland that the Plaintiff's only source of income at the time of the loan transaction was social security payments. The Plaintiff insists that he would have been denied coverage under the Credit Disability policy in Loan Three because he was not employed at the time he

filled out the loan application. The Defendants do not contest that the policy language suggests that Credit Disability policy was ineffective but instead insist that waiver and estoppel prevented the Defendants from dishonoring Plaintiff's Credit Disability coverage.

One of the insurance policy estoppel and waiver cases discussed previously dealt with a credit disability policy. In *Kessler*, the plaintiff-insured secured a credit disability policy which stated that the insurer would be liable only for the return of premiums if the insured was not "gainfully employed at the time of the issue of this certificate." [9] *Kessler*, 299 S.E.2d at 133–34. Evidence revealed that the insured had in actuality been disabled prior to the effective date of the credit disability policy and the trial court dismissed the insured's claim for coverage under the policy. *Id.* at 132–33. The Georgia Court of Appeals affirmed the trial court's dismissal and rejected the insured's argument that the insurer was estopped from denying coverage due to the insurer's acceptance of premiums. *Id.* at 133–34. The *Kessler* court noted that "the contingency putatively insured against, appellant's disability, occurred prior to the date of the policy" and that an insurance policy effective on a certain date does not cover acts preceding its effective date. *Id.* at 134.

■ While the *Kessler* plaintiff's pre-existing disability is different from the Plaintiff's unemployment, the court finds that the *Kessler* holding applies to this matter and adopts that court's holding that waiver and estoppel are not applicable to the Credit Disability policy in Loan Three. Therefore, the Defendants' argument that waiver and estoppel apply to this policy provision is rejected. Based upon this outcome, the court finds that the Plaintiff has provided enough support to avoid summary judgment on the

first element of his fraud claim on the Credit Disability policies in Counts I and II.

■ The Plaintiff must also show that the Defendants acted with either knowledge that the Credit Disability policy was worthless or with reckless disregard as to whether the policy was valid. *Hubbard*, 651 F.Supp. at 298. As to the policy in Loan Three, the court is convinced that the Plaintiff has carried his summary judgment burden of raising a factual issue about whether the Defendants acted either intentionally or at least recklessly. In his deposition, the Plaintiff insisted that Johnny Rowland knew that the Plaintiff's only source of income was social security. Pl.'s Depo. at 84. If the Plaintiff did in fact tell Rowland this information, then each of the Defendants would have acted as least recklessly in representing that the policy was valid knowing of the Plaintiff's unemployment which directly contradicts the language of Form CR–2946.

The Plaintiff also has evidence that Defendant Voyager Life denied claims on credit disability policies where the insured was not employed at the time of application. Pl.'s Br.Opp'n Voyager Life Mot.Summ.J. at 19. For Voyager Life this institutional knowledge provides additional evidence that it acted at least recklessly with regard to the Plaintiff's policy. Ultimately a jury must make this decision since the court finds that there is a material issue of fact concerning the Defendant's intent.

The Plaintiff must also show that he justifiably relied upon the Defendants' misrepresentations in paying premiums for the Loan Three Credit Disability policy.[10] *Hubbard*, 651 F.Supp. at 298. The Defendants contend that the Plaintiff cannot make this showing because the Plaintiff has a duty to have the policy read to him or by someone else in his family. Def. Voyager Life and Voyager In-

---

9. The *Kessler* credit disability policy defined gainfully employed as " 'being actively engaged in any business or occupation ... during normal work weeks of at least thirty hours.' " *Kessler*, 299 S.E.2d at 132. This provision is similar to the policy provisions in this matter.

10. The parties are silent on the third element of fraud which requires a plaintiff to prove that the defendant acted with "intent to induce the plain-

tiff to act or refrain from acting." *Hubbard*, 651 F.Supp. at 298. Therefore, the court will not discuss this element beyond saying that based upon *Hubbard* the court finds that the Plaintiff has satisfied his burden on this element. *See Hubbard*, 651 F.Supp. at 299 (dealing with "excess" insurance premiums for credit life and disability insurance).

demnity Br.Mot.Summ.J. at 14–15; Greene Br.Mot.Summ.J. at 10–11. The court rejects these arguments and relies upon the explanation in the preliminary portion of this opinion where the court found that the Plaintiff could have justifiably relied on the Defendant's alleged misrepresentation.

■ The Plaintiff must additionally prove that he suffered damages as a result of the Defendants' claimed misrepresentations. *Hubbard*, 651 F.Supp. at 298. The Plaintiff claims that he paid $32.44 [11] for the Loan Three Credit Disability premiums. The Defendants counter by insisting once again that they were estopped from denying coverage which means that the Plaintiff had coverage and has not been damaged in any way. Def. Voyager Life and Voyager Indemnity Br. Mot.Summ.J. at 15–16. The court reiterates its earlier rejection of this argument as it relates to Credit Disability insurance and finds that the Plaintiff has proved the required elements to preserve the fraud claims for the Loan Three Credit Disability policy contained in Count II. Therefore, the Defendants' motions for summary judgment on Counts I and II are granted in full with respect to Credit Life insurance and granted as to the Credit Disability policy in Count I and denied as to the Credit Disability policy in Count II.

## COUNT VII

■ In Count VII the Plaintiff alleges that he was never informed of his option to purchase Credit Life or Credit Disability Insurance from a source other than the Defendants. Pl.'s Depo. at 83. Section 33–31–11 of the Georgia Code requires creditors to inform debtors who are purchasing credit insurance that the creditor has the option of purchasing the insurance from another source or rely upon the creditor's pre-existing coverage.[12] The Plaintiff contends that Johnny Rowland's failure to follow this code section constituted a misrepresentation of a material fact in that the Plaintiff was never orally informed of his purchase options.

■ The Defendants note that the Plaintiff was provided with documents which clearly explained that the Plaintiff had the option of purchasing such insurance elsewhere. In *Credithrift of America, Inc. v. Whitley*, 190 Ga.App. 833, 380 S.E.2d 489 (1989), the plaintiffs were charged with knowledge of the provisions of a credit life and accident health insurance policy which informed them of the option of purchasing the insurance coverage elsewhere. While the *Credithrift* decision does stand for the proposition that a party to an insurance policy is charged with that policy's contents, it does not stand for the proposition that the same is true for an illiterate insured. The court finds that the decisions cited in the preliminary section of this opinion control and that the Plaintiff had no duty to inquire beyond the oral representations made by Johnny Rowland. Therefore, there is a factual dispute over whether a misrepresentation occurred with respect to the Plaintiff's options to purchase insurance.

The Plaintiff further contends that the remaining four elements necessary to sustain a misrepresentation claim are also met. According to the Plaintiff, the Defendants' intent is to be inferred from the difference between the code section requiring disclosure of the purchase options and the oral representations of Johnny Roland. Pl.'s Br.Opp'n Mot.Summ.J. Greene Finance Co. at 28–28. Next, the Plaintiff contends that this misrepresentation was made with the purpose of inducing the Plaintiff to purchase insurance

---

**11.** The Plaintiff spent $97.32 on Credit Disability insurance for Loans One, Two, and Three. However, only the policy in Loan Three is still at issue in this matter. While the documents submitted are difficult to read, the court believes that the Plaintiff paid $32.44 for Credit Disability coverage on Loan Three.

**12.** It is not entirely clear why the Plaintiff relies on Georgia Code § 33–31–11 to prove his fraud claim in Count VII. The court interprets the Plaintiff's use of this statute as a standard for inferring the Defendants' intent in making statements regarding the Plaintiff's option to purchase insurance from another source. *See Hubbard*, 651 F.Supp. at 298 ("[T]he alleged violations of the insurance sections of the Georgia Code cited by plaintiffs, at minimum, create an inference that defendant insurance company's statements, in light of these code sections, might have been made in reckless disregard of the truth.").

from the Defendants. *Id.* The Plaintiff insists that his reliance was justifiable and that he was damaged in that he had a pre-existing life insurance policy which made a portion of the subsequently purchased Credit Life coverage unnecessary. *Id.* at 29.

Other than their insistence that there was no misrepresentation, the Defendants do not counter the Plaintiff's allegations on the elements of fraud. Therefore, the court finds that the Defendants' motions for summary judgment on Count VII are due to be denied.

### COUNT VIII

 The Defendants request summary judgment in Count VIII on the basis that the Plaintiff is seeking to use a private action to enforce a provision of the Code of Federal Regulations. However, the Plaintiff insists that he is using the regulation as only an indication of the fraudulent intent of Defendant Greene [13] in taking such a security interest in personal property. Regardless, the court can find no allegation that this alleged misrepresentation caused the Plaintiff any damage.[14] A plaintiff must at least allege some damage to avoid summary judgment on a fraud claim. However, the Plaintiff has made no such allegations in this case and the court finds that Greene's motion for summary judgment on Count VIII is due to be granted.

### COUNT XI

 In Georgia damages for mental distress are generally not recoverable without a pecuniary loss or physical injury. *Westinghouse Credit Corp. v. Hall*, 144 B.R. 568, 577 (S.D.Ga.1992). In Count XI the Plaintiff asserts an independent claim for mental anguish by claiming that the Plaintiff has suffered "severe emotional distress" as the result of the Defendants' conduct. *See In-*

gram v. JIK Realty Co., Inc., 404 S.E.2d 802, 805, cert. denied, (1991). However, such a claim is allowed only where the Plaintiff has suffered no pecuniary or physical damages. *Westview Cemetery, Inc. v. Blanchard*, 234 Ga. 540, 216 S.E.2d 776 (1975). As shown previously each of the Plaintiff's surviving claims contains a viable claim for pecuniary damages of some amount. Therefore, the court finds that the Plaintiff's intentional infliction claim is mooted since such a claim operates only in the absence of pecuniary or physical injury.

 Additionally, the Plaintiff cannot demonstrate that the Defendants' conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yarbrough v. SAS Systems, Inc.*, 204 Ga.App. 428, 419 S.E.2d 507, 509 (1992). In the absence of such a showing, a claim for intentional infliction for emotional distress fails. *Id.* Although the Defendants' alleged conduct, if true, is unsavory it does not rise to the level that arouses the "resentment of an average member of the community and cause[s] him to exclaim 'Outrageous!'" *Johnson v. Savannah College of Art & Design*, 218 Ga.App. 66, 460 S.E.2d 308, 309 (1995). Therefore, the Defendants' motions for summary judgment on Plaintiff's Count IX are due to be granted.

### PUNITIVE DAMAGES

Defendant Greene urges the court to grant summary judgment for Defendants on the Plaintiff's demand for punitive damages. As support for its position, Defendant Greene notes that Georgia courts do not allow punitive damages in cases arising solely out of contract disputes. *See Pelletier v. Schultz*, 157 Ga.App. 64, 276 S.E.2d 118 (1981). How-

---

**13.** Plaintiff has conceded that the federal regulation does not cover the Voyager Defendants since neither is defined as a lender under the regulation. Pl.'s Br.Opp'n Mot.Summ.J. Voyager Life And Voyager Indemnity at 32. The Plaintiff also concedes that these defendants should be granted summary judgment. *Id.* The court will abide by the Plaintiff's concession and grants Voyager Life and Voyager Indemnity's motion for summary judgment on Count VIII.

**14.** It is difficult for the court to see how the Plaintiff could have been damaged over this allegedly fraudulent security interest when the Plaintiff concedes that these household goods were destroyed in a fire prior to the time of any loans in this action.

ever, the court finds that the Plaintiff's claims do not arise solely from a breach of the alleged contract, but instead from alleged fraudulent representations over the terms of the contract. Georgia Code § 51–12–5.1 clearly supports a demand for punitive damages in the case of fraud. Therefore, the court finds that Defendant Greene's motion for summary judgment on the Plaintiff's claim for punitive damages is due to be denied.

## STATUTE OF LIMITATIONS

 Defendants Voyager Life and Voyager Indemnity urge the court to grant partial summary judgment [15] on Count VII since Loan One was made on May 14, 1992, which is more than two years prior to the filing of the Plaintiff's complaint on December 29, 1994. Since the statutory period is a procedural matter the law of the forum, Alabama, applies.[16] *E.g., Sanders v. Liberty National Life Ins. Co.,* 443 So.2d 909 (Ala.1983). Fraud actions in Alabama are subject to a two-year limitations period. Ala. Code § 6–2–38(*l*) (1993). However, that period does not begin to run for fraud actions under the so-called discovery rule until "discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6–2–3 (1993). Discovery is normally triggered upon the plaintiff's receipt of a document that would put one on notice such that the fraud could be reasonably discovered. *E.g., Jackson v. Secor Bank,* 646 So.2d 1377, 1379 (Ala.1994) (citing *Hickox v. Stover,* 551 So.2d 259, 262 (Ala.1989)).

However, this rule does not apply equally to illiterate plaintiffs. *Foster v. Life Ins. Co. of Georgia,* 656 So.2d 333, 336 (Ala.1994). The *Foster* court held that the insurance "brochure, application, and policy documents could not have put [the plaintiff] on notice because she was illiterate and incapable of reading them." *Id. See also Wilson v. Draper,* 406 So.2d 429 (Ala.Civ.App.1981) (holding that the statute of limitations did not begin to run against an illiterate plaintiff

until more than a year after the plaintiff signed a deed containing evidence of disputed land price). The *Foster* court also rebuffed the defendant's claim that the plaintiff could have asked literate family members to read the documents to her. *Id.* Following this reasoning the court holds that the Plaintiff was not placed on notice of the alleged fraud in relation to Loan One until the Plaintiff's daughter read the policy in August 1994 which means that the fraud claim in Count VII was filed well inside the two year period. Therefore, Defendants Voyager Life and Voyager Indemnity's motion for summary judgment on a portion of Count VII is due to be denied.

## CONCLUSION

Based on the foregoing analysis, it is CONSIDERED and ORDERED that Defendant Greene's motion for summary judgment be and the same is hereby DENIED in part and GRANTED in part.

It is further CONSIDERED and ORDERED that Defendant Voyager Life's motion for summary judgment be and the same is hereby DENIED in part and GRANTED in part.

It is further CONSIDERED and ORDERED that Defendant Voyager Indemnity's motion for summary judgment be and the same is hereby DENIED in part and GRANTED in part.

---

**15.** The motion is for partial summary judgment since Count VII deals with Loans One, Two, and Three and the motion only concerns Loan One.

**16.** This point is not contested by the parties.